IN THE UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF PENNSYLVANIA

GARY LITZINGER,                )
                               )
            Plaintiff,         )
                               )
    v.                         )
                               ) Civil Action No. 07-146J
MICHAEL J. ASTRUE,             )
COMMISSIONER OF                )
SOCIAL SECURITY,               )
                               )
            Defendant.         )

MEMORANDUM JUDGMENT ORDER

AND NOW, this 16th day of March, 2009, upon due consideration of the parties' cross-motions for summary judgment pursuant to plaintiff's request for review of the decision of the Commissioner of Social Security ("Commissioner") denying his application for disability insurance benefits ("DIB") and supplemental security income ("SSI") under Title II and Title XVI, respectively, of the Social Security Act ("Act"), IT IS ORDERED that the Commissioner's motion for summary judgment (Document No. 15) be, and the same hereby is, granted and plaintiff's motion for summary judgment (Document No. 13) be, and the same hereby is, denied.

As the factfinder, an Administrative Law Judge ("ALJ") has an obligation to weigh all of the facts and evidence of record and may reject or discount any evidence if the ALJ explains the reasons for doing so. Plummer v. Apfel, 186 F.3d 422, 429 (3d Cir. 1999). Where the ALJ's findings of fact are supported by substantial evidence, a reviewing court is bound by those

⁕AO 72
(Rev. 8/82)

findings, even if it would have decided the factual inquiry differently. Fargnoli v. Massanari, 247 F.3d 34, 38 (3d Cir. 2001). Moreover, it is well settled that disability is not determined merely by the presence of impairments, but by the effect that those impairments have upon an individual's ability to perform substantial gainful activity. Jones v. Sullivan, 954 F.2d 125, 129 (3d Cir. 1991). These well-established principles preclude a reversal or remand of the ALJ's decision here because the record contains substantial evidence to support the ALJ's findings and conclusions.

Plaintiff filed his applications for DIB and SSI on September 19, 2005, alleging disability beginning December 31, 2003, due to carpal tunnel syndrome, bilateral rotator cuff problems and left leg problems. Plaintiff's applications were denied. At plaintiff's request, an ALJ held a hearing on December 14, 2006. Plaintiff, who waived his right to counsel, appeared and testified at the hearing, as did a vocational expert. On January 4, 2007, the ALJ issued a decision finding that plaintiff is not disabled. The Appeals Council denied plaintiff's request for review on April 28, 2007, making the ALJ's decision the final decision of the Commissioner. The instant action followed.

Plaintiff was 54 years old at the time of the ALJ's decision and is classified as an individual closely approaching advanced age under the regulations. 20 C.F.R. §§404.1563(d), 416.963(d). Plaintiff has a high school education. Plaintiff has past relevant work experience as a meat cutter and slaughterhouse

worker, but he has not engaged in substantial gainful activity at any time since his alleged onset date.

After reviewing plaintiff's medical records and hearing testimony from plaintiff and a vocational expert at the hearing, the ALJ concluded that plaintiff is not disabled within the meaning of the Act. The ALJ found that although the medical evidence established that plaintiff suffers from the severe impairments of bilateral carpal tunnel syndrome, bilateral shoulder impingement with acromioclavicular joint degeneration, arteriosclerotic vascular disease in the left lower extremity and degenerative joint disease in both knees, those impairments, alone or in combination, do not meet or equal the criteria of any of the listed impairments set forth in Appendix 1 of 20 C.F.R., Subpart P, Regulation No. 4 ("Appendix 1").

The ALJ found that plaintiff retains the residual functional capacity to perform a range of light work with several other limitations. Plaintiff is precluded from work that involves overhead reaching or handling, as well as work that involves continuous bilateral hand motion (collectively, the "RFC Finding"). As a result of these limitations, the ALJ determined that plaintiff could not perform his past relevant work. Nonetheless, based upon the vocational expert's testimony, the ALJ concluded that plaintiff's age, educational background, work experience and residual functional capacity enable him to make a vocational adjustment to other work that exists in significant numbers in the national economy, such as security work, light

AO 72
(Rev 8/82)

cashiering or ticket taker/lobby attendant work. Accordingly, the ALJ found that plaintiff is not disabled within the meaning of the Act.

The Act defines "disability" as the inability to engage in substantial gainful activity by reason of a physical or mental impairment which can be expected to last for a continuous period of at least twelve months. 42 U.S.C. §§423(d)(1)(A), 1382c(a)(3)(A). The impairment or impairments must be so severe that the claimant "is not only unable to do his previous work but cannot, considering his age, education and work experience, engage in any other kind of substantial gainful work which exists in the national economy ...." 42 U.S.C. §§423(d)(2)(A), 1382c(a)(3)(B).

The Commissioner has promulgated regulations that incorporate a five-step sequential evaluation process for determining whether a claimant is disabled. The ALJ must determine in sequence: (1) whether the claimant is currently engaged in substantial gainful activity; (2) if not, whether he has a severe impairment; (3) if so, whether his impairment meets or equals the criteria listed in Appendix 1; (4) if not, whether the claimant's impairment prevents him from performing his past relevant work; and (5) if so, whether the claimant can perform any other work which exists in the national economy, in light of his age, education, work experience and residual functional capacity. 20 C.F.R. §§404.1520(a)(4), 416.920(a)(4). If the claimant is found disabled or not disabled at any step, further inquiry is unnecessary. Id.

In this case, plaintiff argues that the ALJ erred in finding

AO 72
(Rev. 8/82)

- 4 -

him not disabled at step 5 of the sequential evaluation process. More specifically, plaintiff contends that the ALJ incorrectly assessed his residual functional capacity, and failed to adequately develop the record. The court finds that these arguments lack merit for the reasons explained below.

Plaintiff first argues that the ALJ's RFC Finding was deficient because he did not include any limitation to account for his alleged difficulty standing and walking. According to plaintiff, the medical evidence of record and his testimony indicates that he has left hip pain and knee pain that significantly impairs his ability to stand and walk. Contrary to plaintiff's assertion, a review of the record indicates that the ALJ's RFC Finding is supported by substantial evidence.

First, an X-ray of plaintiff's left hip revealed a normal joint and no significant degenerative changes. (R. 93). In-office x-rays of plaintiff's knees showed mild to moderate degenerative changes. (R. 118). A subsequent MRI showed no tears in plaintiff's right knee, but probable early osteoarthritis. (R. 119). The MRI further indicated that plaintiff had an anterior cruciate ligament tear in his left knee. (R. 119). In a follow-up appointment with Dr. Bleday for his knee pain, plaintiff reported that his pain was "off and on", but he adhered to a walking regimen of two miles every third day. (R. 120). On examination, Dr. Bleday reported that plaintiff's cruciate and collateral ligaments were intact, even in the left knee which showed evidence of a tear on the MRI. (R. 120). Dr. Bleday

further noted that plaintiff had some soreness in his left hip. (R. 120). Dr. Bleday diagnosed plaintiff with bilateral knee degenerative joint disease and left hip bursitis. (R. 120). Dr. Bleday advised that plaintiff could work as tolerated. (R. 121).

Although Dr. Bleday diagnosed plaintiff with degenerative joint disease in his knees and hip bursitis, Dr. Bleday did not state that plaintiff had any standing or walking limitations, nor did he state that plaintiff was otherwise limited from a physical standpoint. Plaintiff testified at the hearing that he only had a problem walking "once in a while", and when asked by the ALJ why he felt he was unable to work, plaintiff referred to shoulder problems but did not mention any problems with his knees or hips that would affect his ability to stand and walk. (R. 135, 137). Accordingly, the court concludes that ALJ properly assessed plaintiff's residual functional capacity, and finds that the evidence of record did not warrant any limitations for walking or standing.

Plaintiff next argues that the ALJ failed to exercise the heightened duty to develop the record that he owed to plaintiff as an unrepresented claimant. Specifically, plaintiff complains that the ALJ failed to ask him about his hip, leg and knee pain. Plaintiff's argument is unfounded.

It has long been established in this circuit that the ALJ has a heightened duty to develop a full and fair record when a claimant is unrepresented. Livingston v. Califano, 614 F.2d 342, 345 (3d Cir. 1980); Dobrowolsky v. Califano, 606 F.2d 403, 407 (3d

Cir. 1979). However, the fact that a claimant is unrepresented by counsel and has knowingly waived this right is not alone sufficient for remand. Hess v. Secretary of Health, Educ. and Welfare, 497 F.2d 837, 840 n.4 (3d Cir. 1974). Rather, remand is appropriate only where "the lack of counsel prejudiced the claimant or ... the administrative proceeding was marked by unfairness due to lack of counsel." Livingston, 614 F.2d at 345.

In fulfilling the duty to help a pro se claimant develop the record, an ALJ must scrupulously and conscientiously probe into, inquire of and explore for all the relevant facts. Reefer v. Barnhart, 326 F.3d 376, 380 (3d Cir. 2003). The court believes that the ALJ did so in this case and that all of the relevant information was before the ALJ.

As an initial matter, the ALJ obtained all of plaintiff's medical records relating to his hip, leg and knee problems, and therefore had the necessary information from which to analyze these problems. Second, contrary to plaintiff's contention, the ALJ asked plaintiff at the hearing if he had any problems standing, walking or sitting, (R. 135), a question which clearly implicated plaintiff's hip, leg and knee pain. Plaintiff responded that he had problems walking "once in awhile", and that his left leg sometimes gets numb when he sits. (R. 135). If plaintiff experienced more significant problems regarding his hip, leg or knee pain, he undoubtedly would have mentioned that to the ALJ when he was asked whether he had difficulty standing, walking or sitting.

In addition, the ALJ invited plaintiff to elaborate on any limitations that he believed were relevant when he asked, "Mr. Litzinger, is there anything you want to tell me, anything else you want to tell me about the reasons why you feel you cannot work, not just at your prior work but at any other job?" (R. 137). In response, plaintiff only identified his shoulder problems as limiting his ability to work. (R. 137). Plaintiff did not state that he was unable to work due to any problems with his hip, leg or knees.

Finally, after the vocational expert testified that a person with plaintiff's residual functional capacity could perform security work, light cashiering or ticket taker/lobby attendant positions, the ALJ asked plaintiff if he thought he could do any of those jobs. (R. 138). Plaintiff testified that he did not think he would qualify for security work. Otherwise, from a physical standpoint, plaintiff's only concern was that his hand would hurt if he had to complete paperwork. (R. 138). Plaintiff did not testify that his hip, leg or knee pain would prevent him from performing any of the jobs the vocational expert identified.

In sum, the ALJ asked plaintiff questions at the hearing designed to elicit any information that plaintiff believed was relevant to his functional limitations, and the ALJ obtained all of the medical records relevant to plaintiff's hip, leg and knee problems. Therefore, the court finds that the ALJ satisfied his duty to plaintiff, as an unrepresented claimant, to fully and fairly develop the record in this case.

After carefully and methodically considering all of the medical evidence of record and plaintiff's testimony, the ALJ determined that plaintiff is not disabled within the meaning of the Act. The ALJ's findings and conclusions are supported by substantial evidence and are not otherwise erroneous. Accordingly, the decision of the Commissioner must be affirmed.

*Gustave Diamond*
Gustave Diamond
United States District Judge

cc: Karl E. Osterhout, Esq.
1789 S. Braddock Avenue
Suite 570
Pittsburgh, PA 15218

Stephanie L. Haines
Assistant U.S. Attorney
319 Washington Street
Room 224, Penn Traffic Building
Johnstown, PA 15901

AO 72
(Rev. 8/82)